85   129
499   503

CITY OF BANGOR, Trustee, in equity,
*vs.*
FLAVIUS O. BEAL, and others, Trustees, and
BANGOR MECHANICS' ASSOCIATION.

Penobscot.   Opinion November 16, 1892.

*Revised Statutes, c. 3, §§ 51, 52; c. 45, § 1; c. 77, § 6, par. VII.*

A testator bequeathed to the city of Bangor $100,000, "the principal to be held in trust, and the income thereof applied and appropriated by said city for the promotion of education" and other charitable purposes.  This fund came into the control and management of a board, Trustees of the Hersey Fund, appointed by the city under an ordinance, who, in accordance therewith, invested the fund in securities and devoted the net annual income for a public library composed in part of books and funds contributed by others, pursuant to an agreement made under the provisions of the ordinance.

By a subsequent ordinance of the city council, the city voted to withdraw from its trustees the care and control of the principal of the fund, but leaving to them all their other powers, including the control and direction of the library and the care and control of the income of the fund; and directed the trustees to pay over and deliver the principal to the city treasurer.

Upon a bill filed by the city, seeking to enforce the latter ordinance, *Held ;* That the city council, representing the city of Bangor, the beneficiary and trustee under the will of the testator, has the right to resume the possession and active, direct control of the principal of the fund; *And,* that the city under the statute (R. S., c. 3, §§ 51, 52) being authorized to accept the fund can appoint agents or trustees to manage it, being responsible for them and its security.

A trustee by investing trust funds in his own business, or for his own benefit or accommodation, becomes an insurer of the fund and its productiveness; and in such case cannot have the previous opinion of the court, under R. S., c. 77, § 6, par. VII, upon the expediency of the investment; or the determination of hypothetical questions, such as the rate of interest the city is liable to pay.

ON REPORT.

Bill in equity heard on bill, answers and testimony, and was certified to the law court under R. S., c. 77, § 43.

This was a bill of interpleader filed by the city of Bangor to obtain the direction of the court upon the facts, which are sufficiently stated in the opinion, relating to the Hersey fund. The managers of the fund appointed under an ordinance of the

city and the Mechanics' Association were made parties. The prayer of the bill asked the court for instructions as to the respective rights and duties of the parties, and particularly : *first*, to decide and instruct the parties whether, under the conditions of the will and other facts, the city under the circumstances detailed or proved has the right to appropriate the principal of the Hersey fund for the erection of such a permanent building as is proposed; *second*, whether the city had or has the right as claimed after the agreement, as set forth by the respondent Association, had been made in 1883, and acted upon until 1892, to amend and alter the terms of the ordinance as was done by the amended ordinance without the assent of said Association,— and under said amended ordinance to require the respondent (managers) trustees to pay and deliver to the city treasurer the bonds, stocks, securities and money forming the principal of said fund.

*H. L. Mitchell*, City Solicitor, for City of Bangor.

*A. W. Paine*, for Trustees of Hersey Fund.

*Appleton and Chaplin*, for Mechanics' Association.

EMERY, J. The following narrative of facts abridged from the bill, answers and evidence, will sufficiently indicate the question to be determined.

Samuel F. Hersey bequeathed to the City of Bangor $100,000 "the principal to be held in trust, and the income thereof applied and appropriated by said city for the promotion of education," etc. This sum was accordingly paid over to the city by the executors, and the city duly accepted the same by a vote of its City Council passed March 6, 1883.

The city by an ordinance of its City Council passed March 13, 1883, placed the funds so received in the care and custody of a board of five men, styled "Trustees of the Hersey Fund." By this ordinance, these trustees were directed to keep the fund distinct from any other moneys held by the city; to keep the principal up to the full sum of $100,000; and to devote the remainder of the net annual income of the fund to the establishment and perpetual maintenance of a public library in Bangor,

either independently, or in connection with some existing library.

There was at this time existing in Bangor a library owned by the Bangor Mechanic Association. The books were worth nearly $20,000, and the association also had a library fund of some $12,000 held by the city in trust. This association and the trustees under the city ordinance made a contract, dated May 21, 1883, in which it was stipulated that all the books of the existing library of the association, and all such new books as might be purchased with the proceeds of the funds of the association, should be transferred to the city to hold in trust for a " Public Library," to be used in common with such books as might be purchased by the income of the "Hersey Fund." It was also stipulated that the income of the association funds, and the income of the "Hersey Fund," should be perpetually devoted to the maintenance of the public library so established.

It was further stipulated that the whole library should be exclusively and entirely under the control and direction of a "Board of Managers" to consist of five trustees of the Hersey Fund, and such officers of the association, not exceeding four, as the association should appoint. The association made the transfer immediately thereafter in accordance with the contract, and the city by a vote of the City Council, passed June 5, 1883, ratified the contract and accepted the transfer on the terms and conditions therein named.

The Public Library thus established has been maintained ever since by the income of the Association Fund and by the income of the Hersey Fund and has been controlled and directed by the board of managers provided for in the contract. ° The principal of the Hersey Fund has been in the control of the trustees of the Hersey Fund as provided in the ordinance of March 13, 1883, and the net income has been exclusively devoted to the library.

In August, 1892, the City Council of Bangor amended the ordinance of March 13, 1883, so as to withdraw from the trustees of the Hersey Fund the care and control of the principal of the fund, but leaving to them all their other powers, including the control and direction of the library and the care and control

of the income of the fund, to be by them devoted to the perpetual maintenance of the library. The City Council thereupon passed a vote directing the trustees of the Hersey Fund to pay and deliver to the city treasurer all the money and securities constituting the principal of the Hersey Fund to the amount of $100,000. The trustees have declined to do so. The city thereupon has filed this bill against the trustees and the Bangor Mechanic Association and prays for a decree that such transfer be made.

Were it not for the contract made with the Bangor Mechanic Association, no question would probably be made. Mr. Hersey selected the city as his trustee. He bequeathed the fund to the city. The city under our law (R. S., c. 3, § 51) was authorized to accept such funds and execute such trusts. Like other trustees, the city took the legal title in the fund. Like other trustees the city had the task and responsibility of its safe and fruitful investment. Like other trustees, the city had the consequent right and power to manage the fund, at least within the lines laid down in the instrument creating the trust. The City Council stands for the city in all these respects. It could appoint agents or trustees to manage the fund, and be responsible for them. (R. S., c. 3, § 52.) It could discharge such agents and appoint others, or could dispense with them altogether, and manage the fund directly by its own votes. The power accompanies the responsibility.

Has the city by the contract with the Bangor Mechanic Association freed itself from this responsibility and deprived itself of this power as to the principal of the fund? We do not find in the contract, even read in connection with the ordinance, any stipulation to that effect. There are stipulations as to the application of the income, and as to the government of the library, and these are left in full force by the new ordinance and vote of August, 1892. There is, however, no stipulation that the city shall make no change in the management or investments of the principal. The city retains the title and ownership of the fund and remains responsible for its proper investment. (R. S., c. 3, § 52.) The loss of the funds from improper investments

would fall primarily on the city the trustee which had accepted the trust and undertaken its execution. All proceedings by the Attorney General in behalf of the public in relation to the fund, would be against the city. The city could not avoid such litigation and liability by pleading the ordinance of March 13, 1883, or the contract with the Mechanic Association. If, therefore, the ordinance and the contract have not lifted from the city its original responsibility for the safety and fruitfulness of the fund, they have not taken away from the city its original power over the principal of the fund. The power remains with responsibility.

The bill further states that the City Council, upon recovering possession of the principal of the fund, proposes to invest it in the construction of a public building in the city to be called "The Hersey Memorial Building," and to be owned, controlled and largely occupied by the city with its various departments and boards or committees. The bill then asks that the court approve the proposed investment, under R. S., c. 77, § 6, par. VII.

We see no occasion for the court to express any opinion on the propriety or wisdom of the proposed investment. A trustee by investing trust funds in his own business, or for his own benefit or accommodation, becomes an insurer of the fund and of its productiveness. In such case no question can arise as to the wisdom or folly of the investment.

The statute also (R. S., c. 3, § 52,) makes the city an insurer in such cases. It is only in making investments entirely outside of, and apart from his own property or interests, that a trustee can have the previous opinion of the court.

It is still further suggested in the pleadings and the briefs of counsel that, in the event it is held that the city can resume the possession and direct control of the principal of the fund, and upon the hypothesis that the city will use the fund as proposed, the court will determine what rate of interest, or income, the city shall allow therefor to the trustees of the Hersey Fund and managers of the Public Library.

The court clearly should not answer hypothetical questions. The actual controversy has not yet arisen. It may never arise.

The full contingency stated may never happen. If it does happen there may still be no controversy. The amount the city might voluntarily offer might be satisfactory. Again, the public may have an interest in that question and the Attorney General may claim the right to intervene.

We may remind the parties, however, of the general principle that a trustee making use of trust funds is accountable at least for legal interest thereon (Perry on Trusts, § 468) ; and that in this State the legal rate of interest, when not otherwise expressed in writing, is six per cent per annum. The statute declaring that interest shall be allowed if the trust fund is used by the municipality (R. S., c. 3, § 52,) does not name any other rate. See also case *Ludwick* v. *Huntzinger*, 5 Watts and Serg. 51, cited with approval in *Eaton* v. *Boissonnault*, 67 Maine, 540.

But we only decide the single question imposed on us by the pleadings and evidence. We only decide that the City Council, representing the city of Bangor, has the right to resume the possession and active, direct control of the principal of the "Hersey Fund."

> *Bill sustained and decree to be made according to the opinion.*

WALTON, VIRGIN, LIBBEY, FOSTER and WHITEHOUSE, JJ., concurred. PETERS, C. J., did not sit.